UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THOMAS CANTORE and PENELOPE CANTORE,

                Plaintiffs,

        -against-

NEW YORK CITY LAW DEPARTMENT, ZACHARY
W. CARTER, and MICHAEL A. CARDOZO,

                Defendants.
-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
19-CV-3879 (RRM) (PK)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Thomas Cantore and Penelope Cantore, proceeding *pro se*, bring this § 1983 action against the New York City Law Department, as well as current and previous New York City Corporation Counsel Zachary W. Carter and Michael A. Cardozo, alleging, among other things, violations of their constitutional rights arising out of the denial of Mr. Cantore's Accident Disability Retirement benefits following his retirement from the New York City Police Department ("NYPD") in 2008. Defendants now move to dismiss the Cantores' complaint. (Motion to Dismiss (Doc. No. 15).) For the reasons set forth below, the motion to dismiss is granted.

## BACKGROUND

**I.**     **Relevant Facts**

      The following facts are drawn from the Cantores' complaint, (Compl. (Doc. No. 1)), as well as documents filed in previous actions brought by Thomas Cantore of which this Court may properly take judicial notice. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court

not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Thomas Cantore joined the NYPD on July 5, 1989. (Compl. ¶ 19.) Cantore was in the NYPD until his retirement on June 17, 2008. (*Id.* ¶¶ 20–21.) Cantore applied for accident disability retirement ("ADR") benefits at the time of his retirement. (*Id.* ¶ 25.) In support of this application, Cantore argued before the Medical Board of the New York City Police Pension Fund Article II ("Medical Board") that he had heart disease entitling to him to ADR benefits under the "Heart Bill," N.Y. Gen. Mun. Law § 207-k. (Declaration of Frances Polifione ("Polifione Decl."), Ex. B ("Record") (Doc. No. 15-3) at 68.)[1] The Heart Bill provides that

> any condition of impairment of health caused by diseases of the heart . . . resulting in total or partial disability . . . to a paid member of the uniformed force of a paid police department . . . who successfully passed a physical examination on entry into the service of such respective department, which examination failed to reveal any evidence of such condition, shall be presumptive evidence that it was incurred in the performance and discharge of duty, unless the contrary be proved by competent evidence.

N.Y. Gen. Mun. Law § 207-k. The Medical Board concluded that Cantore was disabled not due to heart disease, but due to diabetes, hypertension, and sleep apnea. (Record at 66–68.) Following the Medical Board's recommendation, the Board of Trustees of New York City Police Pension Fund ("Board of Trustees") finally denied Cantore's application for ADR benefits on June 10, 2009, concluding he would continue to receive only Ordinary Disability Retirement ("ODR") benefits. (*Id.* at 71.)

Cantore challenged his denial of benefits in a suit before the Supreme Court of the State of New York, County of New York, *see Cantore v. Kelly*, Index No. 114152/09 (N.Y. Sup. Ct. Oct. 5, 2009). (Record at 1–13.) In that action, Cantore sought review of the Board of

---

[1] Page numbers refer to pagination assigned by the Court's Electronic Case Filing system.

2

Trustees's decision pursuant to Article 78 of New York's Civil Practice Law and Rules.  Cantore contended that the decision to deny ADR benefits failed to apply the presumption he was owed under the Heart Bill and was "arbitrary, capricious, unreasonable, unlawful and contrary to the provisions of the Constitution of the United States and the State of New York statutes."  (Record at 11–12.)

The state court upheld the Board of Trustees's decision.  Justice Alice Schlesinger held that the Board of Trustees's decision was not arbitrary, capricious, or wholly irrational and explained that "the presumption of an underlying heart disease ha[d] not been made out" for the purposes of the Heart Bill.  *See Cantore v. Kelly et al.*, Index No. 114152/09 (N.Y. Sup. Ct. Apr. 14, 2010).  (Polifione Decl., Ex. C ("Article 78 Decision") (Doc. No. 15-4) at 6–7.)

On June 28, 2010, Cantore sought to appeal the decision in the Appellate Division of the Supreme Court, First Department.  (Polifione Decl., Ex. D (Doc. No. 15-5).)  However, Cantore's second motion for an extension of time to file his appellate brief was denied, and his appeal was dismissed on September 4, 2012.  (Polifione Decl., Ex. J (Doc. No. 15-11).)  Cantore sought leave to appeal the decision to the New York Court of Appeals, but his motion for leave to appeal was denied on December 27, 2012.  (Polifione Decl., Ex. M (Doc. No. 15-14).)

Cantore has since filed two actions in the Southern District of New York challenging the denial of his benefits and alleging misconduct by various organizations and individuals involved in his benefits claim.  *See Cantore v. Kelly*, No. 13-CV-8085 (PGG) (S.D.N.Y. March 3, 2015) (order dismissing case); *Cantore v. City of New York*, No. 16-CV-2748 (PGG), 2017 WL 11501442, at *1–6 (S.D.N.Y. Sept. 15, 2017) (order dismissing case).

*Cantore v. Kelly* (the "2013 Action") was dismissed for failure to state a claim, as well as on the principle of res judicata based on the judgment against Cantore in the prior Article 78

3

action. (*See* Polifione Decl., Ex. P (Doc. No. 15-17) ("Order Dismissing 2013 Action").) Among the reasons for his decision, Judge Gardephe explained that Cantore's claim that the defendants in that action had deprived him of his Due Process rights failed because Cantore "ha[d] been afforded the right to be heard at a meaningful time and in a meaningful manner," and thus had not established that he had been denied a property right without due process of law. (*Id.* at 18–19.) Similarly, Judge Gardephe dismissed Cantore's Equal Protection claim on the grounds that Cantore had not pled facts to establish that he was treated "differently from similarly situated individuals." (*Id.* at 22.)

*Cantore v. City of New York* (the "2016 Action") was dismissed pursuant to res judicata based on the Court's decision in the 2013 Action as well as the Article 78 action. 2017 WL 11501442, at *8–9. Cantore failed to appeal the district court's judgment against him in the 2016 Action within thirty days of entry and the court denied Cantore's motion to reopen the time to file an appeal under Federal Rule of Civil Procedure 4(a)(6). *See Cantore v. City of New York*, No. 16-CV-2748 (PGG), 2018 WL 10435166 (S.D.N.Y. May 9, 2018). The Second Circuit affirmed the district court's denial. *See Cantore v. City of New York*, 764 F. App'x 110, 111 (2d Cir. 2019).

**II. Complaint**

Thomas Cantore and his wife Penelope Cantore now bring this action alleging a conspiracy within the New York City Legal Department to deny Thomas Cantore ADR benefits. The Cantores allege that the New York City Legal Department, former New York Corporation Counsel Carter and Cardozo, and unnamed co-conspirators, "engaged in a surreptitious plot to deprive the plaintiff of a fair and impartial medical and administrative review of his ADR application." (Compl. at 6.) Cantore further alleges that defendants

4

> acting in concert with their co-conspirators, . . . failed to overcome the legislative presumption of 'job related,' which covers hypertension and related heart disease, which plaintiff suffers from, erroneously charging plaintiff condition [sic] to 'obesity,' which is belied by the irrefutable, incontrovertible record, proving that plaintiff is a Tall, (6' 2") large boned male, weighed 270 pounds when sworn into [the] position of police officer and only weighed 20 pounds more over a period of more than 19 years, until his retirement in 2008.

(Compl. at 8–9.)

The Cantores bring § 1983 claims against defendants, alleging denial of their rights to due process and equal protection of the laws under the Fourteenth Amendment to the Constitution as well as state law claims of fraudulent concealment and unjust enrichment. (Compl. 11–16.)  As part of their constitutional claims, the Cantores contend that New York's Article 78 procedures violate the Fourteenth Amendment's Due Process Clause by providing an inadequate remedy and failing to give Cantore notice that the proceeding might bar his ability to pursue a damages action in the future.  (*Id.* at 12.)  As the basis for their challenge under the Fourteenth Amendment's Equal Protection clause, the Cantores contend that Thomas Cantore, as part of "a protected class of disabled Americans" was denied equal protection of the laws when he was denied ADR benefits.  (*Id.* at 13.)

### III.     Motion to Dismiss

Defendants move to dismiss arguing, among other things, that the Cantores' action is barred by the doctrine of res judicata due to the prior dismissals of Thomas Cantore's claims in state and federal court.  (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Mot.") (Doc. No. 15-24) at 21.)  Defendants argue that res judicata bars these claims to the extent they are brought by Penelope Cantore as well, given that that she does not raise any claims independent from those brought by her husband.  (*Id.* at 22.)  Defendants also argue that the

5

Cantores have failed to allege sufficient facts to state a claim upon which relief can be granted. (*Id.* at 28–31.)

In response, Cantore argues that this action is not barred by res judicata because the instant action involves parties, facts, and claims different from those in his prior actions. (Plaintiffs' Joint Opposition to Defendants' Motion to Dismiss ("Opp.") (Doc. No. 16) at 4–5.)

In reply, defendants argue that the Cantores' claims are barred by res judicata because they arise from the same underlying facts and actions as their prior claims, and to the extent they were not raised previously, they could have been. (Reply in Support of Motion to Dismiss ("Reply") (Doc. No. 17) at 5–7.)

In a sur-reply filed without leave of the Court, the Cantores argue that the principle of res judicata cannot be applied to their action because Penelope Cantore "filed no previous action in any court." ("Sur-Reply" (Doc. No. 18) at 2.)

## STANDARD OF REVIEW

To state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d

6

Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). "Even though res judicata is an affirmative defense, it can be upheld on a Rule 12(b)(6) motion if it is clear from the face of the complaint that the plaintiff[s'] claims are barred." *Angell v. U.S. Army Corps of Engineers*, 149 F. App'x 34, 36 (2d Cir. 2005).

## DISCUSSION

### I.     Applicable Law

The Full Faith and Credit Clause of the United States Constitution and 28 U.S.C. § 1738 together require that federal courts give preclusive effect to state court judgments. U.S. Const. art. IV, § 1. The law governing the preclusive effect of a judgment generally depends on the jurisdiction in which that judgment was issued. When determining the preclusive effect of state court judgments, federal courts ordinarily apply the preclusion law of the state in which the judgment was entered. *See Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367, 369 (2d Cir. 2010); *Fay v. S. Colonie Cent. Sch. Dist.*, 802 F.2d 21, 28 (2d Cir. 1986) ("Federal courts, in adjudicating suits under section 1983, must give the same preclusive effect to a state court's judgment as courts of that same state would give the judgment."), *overruled on other grounds by Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002). When adjudicating the preclusive effect of a judgment issued by a federal court, federal preclusion law applies. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law.").

In New York, the doctrine of res judicata "broadly bars the parties or their privies from relitigating issues that were or could have been raised in [a prior] action." *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 31 N.Y.3d 64, 72 (2018). Specifically, res judicata "bars successive litigation based upon the same transaction or series of connected transactions if: (i)

7

there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008) (internal citation and quotation marks omitted); *see also O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981) (explaining that under New York's "transactional" preclusion rule, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy").

Under federal law, res judicata "bars 'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.'" *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (*In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)).

### A. Res Judicata Effect of State Court Judgment in Article 78 Proceeding

Contrary to defendants' argument in their motion to dismiss, the Cantores' federal claims in this action are not barred by the prior judgment in Thomas Cantore's Article 78 proceeding. Defendants argue that because the Cantores' constitutional claims arise out of the same transaction as the Article 78 action – the denial of Thomas Cantore's ADR benefits – the claims raised here are barred by res judicata even though they were not raised in the Article 78 action. (Mot. at 24.)

While it is true that New York's res judicata rule applies to claims "arising out of the same transaction or series of transactions," *O'Brien*, 54 N.Y.2d at 357, it must also be the case the claims at issue "could have been raised" in a prior action. *Paramount Pictures Corp.*, 31 N.Y.3d at 72. For this reason, the Second Circuit recently explained, "an Article 78 proceeding

8

generally does not preclude a subsequent § 1983 proceeding.  This is because the type of damages sought pursuant to § 1983 are typically not available in Article 78 proceedings, which allow only recovery of incidental damages." *Corbett v. City of New York*, No. 19-2152, 2020 WL 2988856, *2 (2d Cir. June 4, 2020) (summary order) (citations omitted).[2]

Here, the Cantores seek damages under § 1983.  Because they could not have raised these claims in their Article 78 action, at least the Cantores' federal claims are not barred by res judicata based on their prior Article 78 action.[3]

### B. Res Judicata Effect of 2013 Federal Court Action

The Cantores are precluded, however, from bringing their federal claims in this action based on their subsequent federal court litigation challenging the denial of Thomas Cantore's ADR benefits.  Although their allegations in this action are not entirely clear, the Cantores allege that the New York City Legal Department, led by the individual defendants in their roles as Corporation Counsel, "engaged in a surreptitious plot to deprive the plaintiff of a fair and impartial medical and administrative review of his ADR application." (Compl. ¶ 27.)  The Cantores' federal claims are based on § 1983, alleging that this plot to deprive Thomas Cantore

---

[2] The Second Circuit noted in *Corbett* that the res judicata effect of an Article 78 proceeding is different if the state court in the Article 78 proceeding addresses non-Article 78 claims and thereby renders the action a "hybrid proceeding." *Id.* (noting that Corbett sought forms of relief unavailable in an Article 78 action, but, "[n]evertheless, the Supreme Court and First Department addressed the non-Article 78 claims on the merits, rendering the state proceeding a hybrid proceeding"); *see also Powell v. Ward*, 643 F.2d 924, 934 (2d Cir. 1981) ("A prior state proceeding, including an Article 78 proceeding, will preclude relitigation of a civil rights claim in a federal court if the state proceeding reached the federal constitutional issues involved.").  Yet a review of Justice Schlesinger's decision shows that this was in no way treated as a hybrid proceeding where Cantore could have raised the constitutional claims brought here – nor do defendants contend otherwise.  Justice Schlesinger held only that the Board of Trustees's decision was not arbitrary, capricious, or wholly irrational and explained that "the presumption of an underlying heart disease ha[d] not been made out" for the purposes of the Heart Bill. *Cantore v. Kelly et al.*, Index No. 114152/09 (N.Y. Sup. Ct. Apr. 14, 2010). (Article 78 Decision at 6–7.)

[3] Because the Court ultimately dismisses the Cantores' federal claims and declines to exercise supplemental jurisdiction over their state law claims, *see* Part II–III, *infra*, the Court does not reach the question of whether the Cantores' state law claims are barred by res judicata.

9

of ADR benefits deprived him of his rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.  (Compl. ¶¶ 54–60.)

In the 2013 Action, Thomas Cantore similarly alleged that NYPD Commissioner Raymond Kelly, the NYPD, the Board of Trustees of the Police Pension Fund, and the City of New York "conspired to deprive [Thomas Cantore] of a 'fair and impartial' Review of his Accidental Disability Pension Application, and . . . due process, in violation of the Fourteenth Amendment of the United States Constitution."  (Polifione Decl., Ex. N ("2013 Complaint") (Doc. No. 15-15) ¶ 53 (emphasis omitted).)  Thomas Cantore also alleged a violation of his rights under the Equal Protection Clause based on the same conduct.  (*Id.* ¶¶ 55–57.)  As in this case, Thomas Cantore brought these actions pursuant to § 1983, alleging that defendants "conspired to deprive Plaintiff of his federally protected Constitutional Rights."  (*Id.* ¶ 61 (emphasis omitted).)

In a March 3, 2015, Order, Judge Paul G. Gardephe of the Southern District of New York dismissed Thomas Cantore's action.  *See Cantore v. Kelly et al.*, No. 13-CV-8085 (PGG) (S.D.N.Y. March 3, 2015).  (Order Dismissing 2013 Action.)  In addition to holding that the action was precluded by Cantore's prior Article 78 action, Judge Gardephe held that Thomas Cantore had not pled sufficient facts to state a constitutional claim under § 1983.  (Order Dismissing 2013 Action at 17.)

Judge Gardephe's judgment precludes the Cantores' from bringing the claims in the instant action.  First, the 2013 ruling dismissing Thomas Cantore's action for failure to state a claim was undoubtedly "a final judgment on the merits . . . by a court of competent jurisdiction."[4]  *EDP Med. Computer Sys., Inc.*, 480 F.3d at 624.  Therefore, it precludes later

---

[4] It is of no consequence that Judge Gardephe also dismissed Cantore's actions on res judicata grounds – both were grounds for the decision and serve to preclude future litigation under the res judicata doctrine.  *See Gelb v. Royal*

litigation "in a case involving the same parties or their privies, and . . . the same cause of action.'" *Id.*

The Court further finds that Penelope Cantore was in privity with Thomas Cantore at the time of the 2013 Action and thus can be bound by the judgment against her husband. In the Second Circuit, "a party will be bound by the previous judgment if his 'interests were adequately represented by another vested with the authority of representation.'" *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (quoting *Alpert's Newspaper Delivery, Inc. v. The New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989)); *see also Levy v. United States*, 776 F. Supp. 831, 835 (S.D.N.Y. 1991) ("The Second Circuit has stated that courts should flexibly apply the privity concept in determining whether claim preclusion exists. Res judicata may bar a second suit even in the absence of literal privity.").

Penelope Cantore's interest in this litigation, according to the Cantores, is that "she is entitled to half of the ADR pension rights of her husband Thomas Cantore." (Opp. at 4.) Given the identity of Penelope Cantore's interest and her husband's interest in the 2013 Action, the Court finds that she was in privity with her husband in that action. *See Monahan*, 214 F.3d at 285. As defendants note, Thomas Cantore "zealously litigated his claims seeking an ADR pension, which clearly represented [Penelope Cantore's] interests in the prior cases." (Reply at 8.) Penelope Cantore has stated no unique interest in her husband receiving these benefits and points to no reason why her interests were not represented by her husband throughout his extensive litigation of this issue and in the 2013 Action in particular. *See Yan Won Liao v.*

---

*Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986) ("The general rule in this Circuit is that 'if a court decides a case on two grounds, each is a good estoppel.'" (quoting *Irving National Bank v. Law*, 10 F.2d 721, 724 (2d Cir. 1926)); *see also Johnson v. Eli Lilly & Co.*, 689 F. Supp. 170, 174 (W.D.N.Y. 1988) ("Where a judgment is based upon alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment.").

*Holder*, 691 F. Supp. 2d 344, 354 (E.D.N.Y. 2010) (noting that "courts have found privity to exist in . . . cases where the parties represent the interests of the same person, such as in familial relationships"). Accordingly, the Court concludes that Penelope Cantore was in privity with Thomas Cantore and can be bound by the 2013 judgment against him.

      Finally, the Court finds that the Cantores' federal claims are barred by their prior action because the instant action "involv[es] the same cause of action" as Thomas Cantore's 2013 Action. *EDP Med. Computer Sys., Inc.*, 480 F.3d at 624. The Cantores argue that res judicata does not apply because they bring this action against different defendants and based on conduct that "could not have been in earlier litigation [because] the case involves a continuum of Fraud and defendants did not hold office during prior or earlier proceedings." (Opp. at 5.) In essence, the Cantores contend that because they allege a scheme by different defendants – the New York Law Department and its leadership – and because that alleged conspiracy extends up through the Second Circuit decision on their appeal in 2019, their claims constitute a distinct cause of action. (*Id.*) The Cantores ascribe particular meaning to the fact that one of the defendants, Zachary W. Carter, only led the New York Law Department during a period of time after they had filed their 2013 Action. (*Id.* at 6.)

      The Cantores mistake the technical identification of differences between actions for the legal test of when two actions constitute different causes of action. Res judicata is "a rule of fundamental repose important for both the litigants and for society." *In re Teltronics Servs., Inc.*, 762 F.2d at 190. The doctrine "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine could not achieve these important ends if it were helpless against clever substitutions of plaintiffs and defendants,

or the pleading of additional facts that arose following similar past litigation.  *Cf. Berlitz Sch. of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980) (explaining that there is "no mechanical formula to be applied in determining whether two claims are truly duplicative" and "the determination hinges upon the factual predicate of the several claims asserted").  To avoid these workarounds, the Second Circuit has long recognized that "a plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)." *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000).

*Waldman* is instructive here.  Plaintiff-appellant Waldman had brought a prior suit seeking to bar the Village of Kiryas Joel from discriminating against religious dissidents in the provision of public housing – discrimination that, he contended, violated, among other things, the Equal Protection and Establishment Clauses of the Constitution.  *Waldman*, 207 F.3d at 109.  After that action was dismissed, Waldman brought another action, seeking dissolution of the Village on the basis that its excessive entanglement with a particular religious congregation violated the Establishment Clause.  *Id.* at 107.

Waldman argued that the second action was not barred by the first because the first action focused on a different, discrete issue – discrimination in public housing.  *Waldman*, 207 F.3d at 110.  The Court explained that Waldman's claim nonetheless derived "from the same origin or motivation" as his prior action, and "the suits would have formed a convenient trial unit." *Waldman*, 207 F.3d at 111–12 (citing *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997)).  Waldman further argued that new facts discovered after the prior action, including the admission by the Village's mayor that the Village would not enforce state laws that conflicted with religious law, meant that his new claims could not have been brought as part of

13

the prior action. *See Waldman*, 207 F.3d at 112–13. The Court rejected this argument as well. Acknowledging that related subsequent events may at times give rise to a new cause of action, the Court went on to explain that Waldman could not rely on "the mere inclusion of a few post-[first action] Village acts, themselves satisfactorily remediable through appropriately tailored relief, to resurrect a claim, grounded almost entirely upon pre-[first action] events." *Id.* at 114.

Like the plaintiff in *Waldman*, Thomas Cantore seeks to "resurrect a claim" that could have been remedied in his prior action by pointing to relatively insignificant events that occurred after Judge Gardephe's 2013 decision. *Waldman*, 207 F.3d at 114. Defendants' conspiracy, the Cantores allege, began in 2008 and ran continuously through the time they filed their 2013 complaint. (Compl. at ¶ 33.) The Cantores emphasize the fact that defendant Carter had not yet taken over leadership of the New York Law Department at the time the 2013 Action was commenced. But the Cantores present no reason to believe that they lacked in 2013 the facts necessary to bring the current claims against the Law Department, which had allegedly been involved in a conspiracy against the Cantores since 2008 – a conspiracy involving conduct nearly identical to the conduct alleged against the defendants in the 2013 Action. The instant claims would surely have formed a "convenient trial unit" with the 2013 Action and undoubtedly arise from the same "same origin or motivation" as the 2013 Action – the denial of Thomas Cantore's ADR benefits. *Waldman*, 207 F.3d at 111–12 (citing *Interoceanica Corp.*, 107 F.3d at 90).

At root, the Cantores allege a conspiracy that they have already raised in prior litigation. To accept the Cantores' reasoning on the application of res judicata would mean that the Cantores could bring this action repeatedly, ad infinitum, so long as the New York Law Department continues to be helmed by new leadership and continues to oppose Thomas Cantore's claim that he was wrongfully denied ADR benefits by the Board of Trustees. The law

14

opts for "fundamental repose" and precludes repeated litigation of the sort the Cantores pursue here. *In re Teltronics Servs., Inc.*, 762 F.2d at 190. Since a court of competent jurisdiction has previously entered judgment against the Cantores with respect to their federal causes of action, the Court finds that the Cantores' federal claims must be dismissed pursuant to res judicata.

## II.     State Law Claims

"Time and time again, the Second Circuit has held that 'if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well.'" *Lederhouse v. Landau Arnold Laufer LLP*, No. 15-CV-8668 (AT) (SDA), 2018 WL 1635030, at *5 (S.D.N.Y. Apr. 4, 2018) (quoting *Brzak v. U.N.*, 597 F.3d 107, 113–14 (2d Cir. 2010)); *see also* 28 U.S.C. § 1367(c)(3). Having dismissed the Cantores' federal claims on res judicata grounds, the Court declines to exercise supplemental jurisdiction over their remaining state law claims.

## III.    Leave to Amend

A Court generally should not dismiss a *pro se* complaint without granting the plaintiff leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Dismissal without leave to amend is warranted, however, where amendment would be futile. *Id.* Given the Cantores' repeated, unsuccessful attempts to litigate this claim, the Court finds that leave to amend would be futile and denies the Cantores leave to amend.

## CONCLUSION

For the reasons set forth above, the Cantores' action is dismissed. The Clerk of Court is respectfully directed to enter judgment for defendants, mail a copy of this Order and the Judgment to the *pro se* plaintiffs, to note the mailing on the docket, and to close this case.

SO ORDERED.

Dated: Brooklyn, New York  
       September 28, 2020

*Roslynn R. Mauskopf*

_____  
ROSLYNN R. MAUSKOPF  
Chief United States District Judge